UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| GMAC BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 08 C 1792 |
| v. | ) | |
| | ) | |
| HOME MORTGAGE, INC., LAWRENCE | ) | |
| LUCKETT and JOHN DOES 1-10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT HOME MORTGAGE, INC.'S
### ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO
### PLAINTIFF'S COMPLAINT

Defendant, Home Mortgage, Inc. ("HMI"), by and through its attorneys, Garfield &

Merel, Ltd., for its Answer to Plaintiff GMAC Bank's Complaint, states as follows:

### NATURE OF ACTION

Complaint ¶1:    Plaintiff GMAC is a victim of a complex fraudulent
scheme orchestrated by Defendant Luckett and his company, Defendant HMI.
Pursuant to this scheme, Luckett submitted requests to GMAC for advances on
HMI's line of credit. Those requests falsely stated that the advances would be
collateralized by mortgage loans. In fact, Luckett submitted to GMAC fictitious
mortgage loan documents that he himself, and/or others at his direction, had
created using fictitious names, social security numbers and other information.
Luckett and HMI engaged in this scheme to defraud GMAC from August 2007 to
March, when GMAC discovered the fraudulent scheme.

**ANSWER:**    HMI admits, on information and belief, that Luckett individually perpetrated a

scheme to defraud GMAC, but denies that HMI participated in, concealed or otherwise had

knowledge of such scheme or benefited from any such scheme. After diligent inquiry, HMI

lacks sufficient knowledge to admit or deny allegations relating to the details of Luckett's

scheme and documentation submitted by Luckett to GMAC.

### PARTIES

Complaint ¶2:    GMAC Bank ("GMAC") is a Utah industrial bank with its principal place of business in Fort Washington, Pennsylvania.

**ANSWER:**    HMI lacks sufficient knowledge and information to form a belief as to the truth of the allegations set forth in paragraph 2 of Plaintiff's Complaint.

Complaint ¶3:    Defendant Home Mortgage, Inc. ("HMI") is an Illinois corporation with its principal place of business in Burr Ridge, Illinois.

**ANSWER:**    HMI admits the allegations set forth in paragraph 3 of Plaintiff's Complaint.

Complaint ¶4:    Defendant Lawrence Luckett ("Luckett") is the Chief Executive Officer of HMI and resides at 59 Woodview Lane in Lemont, Illinois. Defendant Luckett is an Illinois citizen.

**ANSWER:**    HMI admits that, prior to March 13, 2008, Luckett was the Chief Executive Officer of HMI and lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations set forth in paragraph 4 of Plaintiff's Complaint.

Complaint ¶5:    The true names and capacities, whether individual, corporate, associate, or otherwise of Doe defendants 1-10, inclusive, are unknown to GMAC at this time and therefore GMAC sues each of these Defendants by fictitious names. GMAC will attend the complaint to allege the true names and capacities of the Doe defendants after they have been ascertained.

**ANSWER:**    HMI lacks sufficient knowledge and information to form a belief as to the truth of the allegations set forth in paragraph 5 of Plaintiff's Complaint.

## JURISDICTION AND VENUE

Complaint ¶6:    This is an action between citizens of different states where the matter in controversy exceeds the sum of value of $75,000, exclusive of interest and costs, under 28 U.S.C. §1332.

**ANSWER:**    HMI admits the allegations set forth in paragraph 6 of Plaintiff's Complaint.

Complaint ¶7:    Venue is proper in this judicial district under 28 U.S.C. §1391.

**ANSWER:**    HMI admits the allegations set forth in paragraph 7 of Plaintiff's Complaint.

## BACKGROUND

**A.    The Warehouse Lending Business**

Complaint ¶8:    GMAC engages in the business of Warehouse Lending for residential mortgage loans.    As a warehouse lender, GMAC provides revolving lines of credit to mortgage lenders like HMI.  The warehouse line of credit GMAC offers is intended to provide liquidity to mortgage lenders, allowing them to make mortgage loans to individual home buyers.  The mortgage loan originated to the individual home buyers by the mortgage lender is pledged to GMAC, as the warehouse lender, as security for GMAC's advances to the mortgage lender under the warehouse line of credit.  GMAC perfects its interest in such mortgage loans by: (a) filings under the Uniform Commercial Code and other applicable law; and (b) possession of the promissory notes that evidence the mortgage loans.  GMAC's security interest is released upon sale of the mortgage loan.

**ANSWER:**    HMI admits, on information and belief, that GMAC engages in the business of Warehouse Lending for residential mortgage loans, admits that GMAC provided a line of credit to HMI at various times and that the Credit Agreement between HMI and GMAC provides for pledging of mortgage loans to GMAC as security for advances, which are released upon sale of the loan.  HMI lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations set forth in paragraph 8 of Plaintiff's Complaint.

Complaint ¶9:    Warehouse advances, however, are intended only as temporary funding for any individual mortgage loan.  The warehouse advance made to the mortgage lender must typically be repaid within 120 days because the mortgage lender is expected to sell the mortgage loans to a third-party investor in the secondary market.  The proceeds of such a sale satisfy amounts outstanding under the warehouse line of credit.  Any excess proceeds then go to the mortgage lender.  Contemporaneous with the receipt of proceeds of the sale of a mortgage loan, GMAC releases its security interest in the mortgage loan.

**ANSWER:**    HMI admits that warehouse advances pursuant to any agreement between HMI and GMAC were required to be repaid pursuant to the terms of that Agreement to satisfy amounts due under the applicable line of credit.  HMI denies all remaining allegations set forth in paragraph 9 of Plaintiff's Complaint, since the advances and procedure for such advances are

set forth in an applicable agreement in which repayment is subject to monthly invoices and an

agreed maturity date.

> Complaint ¶10:   From August 2007 through March 2008, GMAC made
> advances under a line of credit to HMI pursuant to a Warehousing Credit and
> Security Agreement dated as of August 20, 2007 (the "Credit Agreement").  The
> Credit Agreement is attached hereto as Exhibit A.  The Credit Agreement was
> amended by a First Amendment to Warehousing Credit and Security Agreement,
> dated as of January 31, 2008, by a Second Amendment to Warehousing Credit
> and Security Agreement dated as of February 22, 2008, and by a Third
> Amendment to Warehousing Credit and Security Agreement, dated as of March 3,
> 2008.  A working copy of the Credit Agreement that incorporates all amendments
> through the date hereof is attached hereto as Exhibit B.

**ANSWER:**     HMI admits that Exhibit A is a Warehousing Credit and Security Agreement

executed by Lawrence Luckett.  HMI admits that Luckett had the authority to execute the Credit

Agreement date August 20, 2007, on behalf of HMI.  HMI denies that Luckett had the authority

to sign, execute or agree to any terms in the Credit Agreement, or any Amendments thereto, that

refer to or require the personal guaranty of Howard Siegel, including, without limitation, the

First, Second and Third Amendments to the Credit Agreement.

> Complaint ¶11:   Under the Credit Agreement, HMI provided a
> promissory note to GMAC (the "Note") to evidence all advances made to HMI
> under the Credit Agreement.  The Note obligated HMI to repay the funds
> advanced under the Credit Agreement with interest and fees.  A true and correct
> copy of the Note, dated August 20, 2007, is attached hereto as Exhibit C.

**ANSWER:**     HMI admits that Exhibit C is a Note executed by Lawrence Luckett and that the

Note provided for repayment of certain advances made under the Credit Agreement.

> Complaint ¶12:   To secure its obligations under the Credit Agreement,
> HMI granted GMAC security interests in, among other things: (i) all mortgage
> loans pledged to GMAC in connection with any warehousing advance request
> (collectively, the "Pledged Loans") and all mortgage notes, mortgages, security
> agreement and other documents; ii) all mortgage-backed securities backed in
> whole or in part on the basis of the Pledged Loans evidencing and securing the
> Pledged Loans; and (iii) all products and proceeds of the foregoing (collectively,
> the "Collateral").

**ANSWER:** HMI admits that the Credit Agreement grants GMAC security interests in

Collateral and Pledged Loans as defined in the Credit Agreement

> Complaint ¶13: Defendant Luckett guaranteed the indebtedness of HMI
> under the Credit Agreement. A true and correct copy of the Guaranty, dated
> August 20, 2007, is attached hereto as Exhibit D.

**ANSWER:** HMI lacks sufficient knowledge and information to form a belief as to the truth

of the allegations set forth in paragraph 13 of Plaintiff's Complaint.

> Complaint ¶14: Subsequent to the execution of the original Guaranty, in
> connection with each and every amendment to the Credit Agreement, Luckett
> executed a "Consent of Guarantor ratifying and reaffirming his obligations under
> the Guaranty so as to include all "Guaranteed Debt, as referenced in each of the
> individual amendments.

**ANSWER:** HMI lacks sufficient knowledge and information to form a belief as to the truth

of the allegations set forth in paragraph 14 of Plaintiff's Complaint. HMI specifically denies that

Howard Siegel executed any Guaranty or Consent of Guarantor in connection with the August

20, 2007 Credit Agreement.

**B.    Intended Operation of the Credit Agreement**

> Complaint ¶15: Pursuant to Section 2.1 of the Credit Agreement, to
> obtain an advance on its line of credit, HMI was required to "deliver to [GMAC]
> either a completed and signed request for a Warehousing Advance on [GMAC's]
> then current form or on an Electronic Advance Request." This submission was
> also known as a Batch Request. The Batch Request included, among other
> information, the identity of the borrower on a particular mortgage loan, various
> information about the home borrower (such as the home borrower's social
> security number), the amount of the home borrower's mortgage loan and wiring
> instructions for the funds to be advance under the Credit Agreement. Upon
> receipt of a Batch Request and loan investor commitment to purchase the home
> borrower's mortgage loan from HMI, GMAC would advance funds in support of
> the transaction identified on the Batch Request. Typically within seven days of
> the closing of each transaction, HMI would send to GMAC a mortgage noted
> signed by the home borrower and an "Endorsement Allonge, or "Allonge to Loan
> executed by HMI.

**ANSWER:**    HMI admits that Section 2.1 of the Credit Agreement includes the quoted language and that the Credit Agreement contemplated that Batch Requests included information required by the Credit Agreement.    HMI further admits that various Batch Requests were delivered to GMAC pursuant to the Agreement from time to time and that various advances were made from time to time for loans in reliance on Batch requests.    HMI lacks sufficient knowledge to admit or deny allegations relating to GMAC's "procedures upon receipt of the Batch Requests or Allonges."

> Complaint ¶16:    Based on the written agreements and prior course of dealing of GMAC and HMI, GMAC expected HMI to have advances outstanding against mortgage loans for varying time periods, but typically for less than 120 days.  At some point prior to the expiration of 120 days, GMAC expected HMI to sell the mortgage loan to a loan investor.  GMAC expected HMI to use the proceeds of the sale to repay the advance to GMAC.  GMAC then expected HMI to repeat the process for further transactions.

**ANSWER:**    HMI lacks sufficient knowledge and information to form a belief as to the truth of the allegations regarding the expectations of GMAC set forth in paragraph 16 of Plaintiff's Complaint.  HMI admits that it used proceeds of sales to repay advances to GMAC.

> Complaint ¶17:    GMAC believed this process to have generally been occurring from August 2007 until March 2008, when GMAC learned that HMI was, at Lawrence Luckett's direction as described in greater detail below, engaged in a scheme to defraud GMAC.

**ANSWER:**    HMI denies the allegations of ¶17 and denies that it was engaged in, had knowledge of, or directed a scheme to defraud GMAC, directed by Luckett or otherwise, and denies that it was aware that Luckett was engaged in any such scheme.  HMI lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations regarding GMAC's belief and knowledge set forth in paragraph 17 of Plaintiff's Complaint.

**C.    GMAC's Discovery of the Fraudulent Scheme**

Complaint ¶18:    On or about February 27, 2008, HMI submitted to GMAC the "Murphy Loan at Luckett's direction. The Murphy Loan purported to be for a mortgage loan for $288,750.00 executed by Nelson Murphy for the property located at 3512 W. Melrose Street, Chicago, Illinois 60618. Luckett stamped and signed the Murphy Loan. The Murphy Loan is attached hereto as Exhibit E.

**ANSWER:**    HMI denies the allegations of paragraph 18. Further answering, HMI states any such alleged acts by Luckett were not on behalf of HMI, were outside the scope of his authority, were not authorized by HMI and were not otherwise permitted by HMI, which had no knowledge of his scheme or actions. HMI denies that it was engaged in any scheme to defraud GMAC.

Complaint ¶19:    On or about March 10, 2008, HMI submitted to GMAC the "Nemeth Loan at Luckett's direction. The "Nemeth Loan purported to be a mortgage loan for $288,750.00 executed by Nelson Nemeth for property located at 3512 W. Melrose Street, Chicago, Illinois 60618. Thus, the Nemeth Loan was secured by same property that secured the Murphy Loan. Luckett stamped and signed the Nemeth Loan. The Nemeth Loan is attached hereto as Exhibit F.

**ANSWER:**    HMI denies the allegations set forth in paragraph 19 of Plaintiff's Complaint. Further answering, HMI states any such alleged acts by Luckett were not on behalf of HMI, were outside the scope of his authority, were not authorized by HMI and were not otherwise permitted by HMI, which had no knowledge of his scheme or actions. HMI denies that it was engaged in any scheme to defraud GMAC.

**D.    Fraudulent Loan Packages**

Complaint ¶20:    HMI submitted fictitious mortgage notes, endorsement allonges, Batch Requests and purchase advances (collectively, the "Fictitious Documents ) to GMAC at Lawrence Luckett's direction for the purpose of drawing funds on HMI's line of credit. The Batch Requests sought advances on GMAC's line of credit that were not collateralized by legitimate mortgage loans, but instead were collateralized by fictitious mortgage loans created by Luckett. The mortgage notes that purported to evidence the fictitious loans bore Luckett's stamp and signature. The Fictitious Documents used false names and listed property addresses that did not actually secure the mortgage loans submitted at Luckett's direction.

**ANSWER:**     HMI denies that it submitted any Fictitious Documents to GMAC at any time and denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed alonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 20 of Plaintiff's Complaint.

> Complaint ¶21:   In reliance on the Fictitious Documents submitted by HMI at Luckett's direction, GMAC advanced funds to HMI from the line of credit.

**ANSWER:**     HMI denies the allegations set forth in paragraph 21 and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed alonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations directed to Luckett set forth in paragraph 21 of Plaintiff's Complaint.

> Complaint ¶22:   HMI, at Luckett's direction, took numerous steps to avoid detection and to perpetuate the fraudulent scheme. One such step was the use of a defunct title insurance company, Companion Title Services, Inc. ("Companion"), to receive the funds advanced by GMAC for the purpose of closing the home buyer's mortgage loan. HMI directed GMAC to wire transfer warehouse advances against fraudulent mortgage loans to a Companion bank account at JPMorganChase bank. Luckett controlled the Companion account at JPMorganChase. Companion never engaged in any legitimate business.

**ANSWER:**    HMI denies the allegations set forth in paragraph 22 and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett.  HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 22 of Plaintiff's Complaint.

Complaint ¶23:    Another step HMI took to avoid detection and to perpetuate the fraudulent scheme was to cause the fictitious mortgages to be listed on the Mortgage Electronic Records System database ("MERS").  MERS is a database that identifies investors in, services of and interim funders (warehouse lenders) of mortgage loans as holding an interest in the mortgages that secure mortgages.  For the properties securing the collateral for warehouse advances under HMI's line of credit with GMAC, HMI always listed GMAC's interest as an interim funder on MERS.

**ANSWER:**    HMI denies the allegations set forth in paragraph 23 of Plaintiff's Complaint.

Complaint ¶24:    Another step HMI took to avoid detection and to perpetuate the fraudulent scheme was to pretend to sell the fictitious mortgage loans to a legitimate investor, but instead of payments coming from the investor to GMAC, the payments came from another company controlled by Luckett, International Paper Exchange, Inc. ("International Paper").  HMI would direct GMAC to ship the home borrower's mortgage note for the investor's review and purchase to a legitimate investor.  HMI could then warehouse new bogus mortgage loans with GMAC, direct an advance from GMAC to Companion to close the mortgage loan, and deposit sufficient funds in International Paper's account to repay the advance against the existing fraudulent loans.  HMI would use the funds in the International Paper account to pay for the "purchase of the existing fraudulent loans, but would submit to GMAC fraudulent purchase advances purporting to be from the legitimate investor.  An example of a fraudulent purchase advice is attached hereto as Exhibit G.  HMI would then inform the legitimate investor that mortgage loans had been delivered in error, and direct that they be returned to HMI instead of GMAC.

**ANSWER:**    HMI denies the allegations set forth in paragraph 24 of Plaintiff's Complaint.

**E.    Prior Fictitious Loans**

Complaint ¶25:   HMI and Luckett have been submitting Fictitious Documents to GMAC as collateral for line of credit advances during the entire term of the Credit Agreement.  Indeed, HMI and Luckett have been perpetrating the scheme under a predecessor agreement with Residential Funding Company, LLC, GMAC's affiliate, since February 2005, long before the Credit Agreement was executed.

**ANSWER:**   HMI denies the allegations set forth in paragraph 25 regarding HMI and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise.   HMI lacks sufficient knowledge to admit or deny any remaining allegations regarding Luckett set forth in paragraph 25 of Plaintiff's Complaint and denies all allegations directed to HMI.

Complaint ¶26:   Pursuant to the scheme, HMI and Luckett secured advances under the warehouse lone of credit that were collateralized by hundreds of fictitious mortgage loans.

**ANSWER:**   HMI denies the allegations set forth in paragraph 26 directed to HMI and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett.   HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 26 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

**F.     Current Fictitious Loans**

Complaint ¶27:    As discussed below, HMI submitted 54 fictitious mortgage loans as collateral in support of advances on its line of credit and GMAC to which HMI remains indebted to GMAC. All such mortgage loans were submitted by HMI to GMAC at Luckett's direction between January 15, 2008 and March 10, 2008. Other than the specific false names, loan amounts and other basic identifying information, the false submissions were identical in format. The following documents illustrate by example the fraudulent transactions that occurred:

**ANSWER:**    HMI denies the allegations set forth in paragraph 27 and specifically denies that

it had knowledge of, participated in, concealed or otherwise authorized or received the benefits

of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort,

including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch

Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in

any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to

admit or deny the allegations regarding Luckett and denies all allegations directed to HMI.

### The "Rathing" Loan

Complaint ¶28:    On February 26, 2008, HMI submitted to GMAC a Batch Request requesting an advance on GMAC's line of credit. The Batch Request indicated that the advance would be secured by a mortgage loan on a property located at 3317 N. Pontiac Avenue, Chicago, Illinois 60634. The Batch Request indicated that the home borrower borrowing the mortgage loan was Jacob Rathing. The Batch Request sought an advance of $305,744.00, 97 percent of the loan amount. The Batch Request instructed that the advance on the line be wired to Companion's bank account No. XXXXX2118 at JPMorganChase Bank, NA in New York City. On that date, in reliance on the purported accuracy of the Batch Request as well as on its anticipated receipt of appropriate mortgage loan documents, GMAC wired $305,744.00 to the account listed on the Batch Request. The Rathing Batch Request is attached hereto as Exhibit H.

**ANSWER:**    HMI denies the allegations set forth in paragraph 28 and specifically denies that

it had knowledge of, participated in, concealed or otherwise authorized or received the benefits

of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort,

including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch

Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations regarding Luckett and denies all allegations directed to HMI.

> Complaint ¶29:    On or about March 10, 2008, HMI submitted to GMAC the "Rathing Loan at Luckett's direction. The "Rathing Loan purported to be a mortgage loan for $315,200.00 executed by Jacob and Kimberly Rathing for property located at 3317 N. Pontiac Avenue, Chicago, Illinois 60634. Luckett stamped and signed the mortgage note evidencing the Rathing Loan. The "Rathing Loan is a fictitious loan. The "Rathing Loan is attached hereto as Exhibit I.

**ANSWER:**    HMI denies the allegations set forth in paragraph 29 and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI denies all allegations directed to HMI.

> Complaint ¶30:    The Batch Request identified a particular social security numbers as belonging to Jacob Rathing. In fact, no such social security number exists.

**ANSWER:**    HMI denies the allegations set forth in paragraph 30 and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett.

### The "Partipilo" Loan

Complaint ¶31:    On February 11, 2008, HMI submitted to GMAC a Batch Request requesting an advance on GMAC's line of credit. The Batch Request indicated that the advance would be secured by a mortgage loan on a property located at 7710 W. Victoria Street, Chicago, Illinois 60631. The Batch Request indicated that the home borrower borrowing the mortgage loan was Partipilo. The Batch Request sought an advance of $276,207.50, 97 percent of the loan amount. The Batch Request instructed that the advance on the line be wired to Companion's bank account No. XXXXX2118 at JPMorganChase Bank, NA in New York City. On that date, in reliance on the purported accuracy of the Batch Request as well as on its anticipated receipt of appropriate mortgage loan documents, GMAC wired $276,207.50 to the account listed on the Batch Request. The Partipilo Batch Request is attached hereto as Exhibit I.

**ANSWER:**    HMI denies the allegations set forth in paragraph 31 and specifically denies that

it had knowledge of, participated in, concealed or otherwise authorized or received the benefits

of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort,

including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch

Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in

any unauthorized acts committed individually by Luckett.

Complaint ¶32:    On or about February 15, 2008, HMI submitted to GMAC the "Partipilo Loan at Luckett's direction. The "Partipilo Loan purported to be a mortgage loan for $284,750.00 executed by Michael and Mary Partipilo for property located at 7710 W. Victoria Street, Chicago, Illinois 60631. Luckett stamped and signed the mortgage note evidencing the Partipilo Loan. The "Partipilo Loan is a fictitious loan. The "Partipilo Loan is attached hereto as Exhibit K.

**ANSWER:**    HMI denies the allegations set forth in paragraph 32 and specifically denies that

it had knowledge of, participated in, concealed or otherwise authorized or received the benefits

of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort,

including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch

Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in

any unauthorized acts committed individually by Luckett.

Complaint ¶33:    The Batch Request identified a particular social security number as belonging to Partipilo. In fact, the Partipilo social security number belongs to an individual named Lightfoot. Lightfoot passed away in December 2005.

**ANSWER:**    HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 33 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

### The "Chilelli" Loan

Complaint ¶34:    On February 11, 2008, HMI submitted to GMAC a Batch Request requesting an advance on GMAC's line of credit. The Batch Request indicated that the advance would be secured by a mortgage loan on a property located at 3204 W. Belmont Avenue, Chicago, Illinois 60618. The Batch Request indicated that the home borrower borrowing the mortgage loan was Francesco Chilelli. The Batch Request sought an advance of $270,048.00, 97 percent of the loan amount. The Batch Request instructed that the advance on the line be wired to Companion's bank account No. XXXXX2118 at JPMorganChase Bank, NA in New York City. On that date, in reliance on the purported accuracy of the Batch Request as well as on its anticipated receipt of appropriate mortgage loan documents, GMAC wired $270,048.00 to the account listed on the Batch Request. The Chilelli Batch Request is attached hereto as Exhibit J.

**ANSWER:**    HMI denies the allegations set forth in paragraph 34 and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to

admit or deny the remaining allegations set forth in paragraph 34 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

> Complaint ¶35:    On or about February 15, 2008, HMI submitted to GMAC the "Chilelli Loan at Luckett's direction. The "Chilelli Loan purported to be a mortgage loan for $278,400.00 executed by Francesco Chilelli for property located at 3204 W. Belmont Avenue, Chicago, Illinois 60618. Luckett stamped and signed the mortgage note evidencing the Chilelli Loan. The "Chilelli Loan is a fictitious loan. The "Chilelli Loan is attached hereto as Exhibit L.

**ANSWER:**    HMI denies the allegations set forth in paragraph 35 and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 35 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

> Complaint ¶36:    The Batch Request identified a particular social security number as belonging to Francesco Chilelli. In fact, no such social security number exists.

**ANSWER:**    HMI specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 36 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

**The "Adkins" Loan**

Complaint ¶37:   On February 8, 2008, HMI submitted to GMAC a Batch Request requesting an advance on GMAC's line of credit. The Batch Request indicated that the advance would be secured by a mortgage loan on a property located at 3751 N. Ridgeway, Chicago, Illinois 60631. The Batch Request indicated that the home borrower borrowing the mortgage loan was Brandon Adkins. The Batch Request sought an advance of $290,563.50, 97 percent of the loan amount. The Batch Request instructed that the advance on the line be wired to Companion's bank account No. XXXXX2118 at JPMorganChase Bank, NA in New York City. On that date, in reliance on the purported accuracy of the Batch Request as well as on its anticipated receipt of appropriate mortgage loan documents, GMAC wired $290,563.50 to the account listed on the Batch Request. The Adkins Batch Request is attached hereto as Exhibit M.

**ANSWER:**      HMI denies the allegations set forth in paragraph 37 and specifically denies that

it had knowledge of, participated in, concealed or otherwise authorized or received the benefits

of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort,

including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch

Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in

any unauthorized acts committed individually by Luckett.  HMI lacks sufficient knowledge to

admit or deny the allegations set forth in paragraph 37 of Plaintiff's Complaint regarding Luckett

and denies all allegations directed to HMI.

Complaint ¶38:   On or about February 11, 2008, HMI submitted to GMAC the "Adkins Loan at Luckett's direction. The "Adkins Loan purported to be a mortgage loan for $299,550 executed by Brandon Adkins for property located at 3751 N. Ridgeway, Chicago, Illinois 60618. Luckett stamped and signed the mortgage note evidencing the Adkins Loan. The "Adkins Loan is a fictitious loan. The "Adkins Loan is attached hereto as Exhibit N.

**ANSWER:**      HMI denies the allegations set forth in paragraph 38 and specifically denies that

it had knowledge of, participated in, concealed or otherwise authorized or received the benefits

of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort,

including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch

Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 38 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

> Complaint ¶39:    The Batch Request identified a particular social security number as belonging to Brandon Adkins. In fact, the Brandon Adkins social security number belongs to an individual named Durham. Durham passed away in January 2008.

**ANSWER:**    HMI specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 39 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

### The "Gennett" Loan

> Complaint ¶40:    On February 8, 2008, HMI submitted to GMAC a Batch Request requesting an advance on GMAC's line of credit. The Batch Request indicated that the advance would be secured by a mortgage loan on a property located at 5442 W. Cullum Avenue, Chicago, Illinois 60641. The Batch Request indicated that the home borrower borrowing the mortgage loan was Kenneth Gennett. The Batch Request sought an advance of $286,054.00, 97 percent of the loan amount. The Batch Request instructed that the advance on the line be wired to Companion's bank account No. XXXXX2118 at JPMorganChase Bank, NA in New York City. On that date, in reliance on the purported accuracy of the Batch Request as well as on its anticipated receipt of appropriate mortgage loan documents, GMAC wired $286,054.00 to the account listed on the Batch Request. The Gennett Batch Request is attached hereto as Exhibit M.

**ANSWER:**    HMI denies the allegations set forth in paragraph 40 and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 40 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

> Complaint ¶41:   On or about February 11, 2008, HMI submitted to GMAC the "Gennett Loan at Luckett's direction. The "Gennett Loan purported to be a mortgage loan for $294,900.00 executed by Kenneth and Elizabeth Gennett for property located at 5442 W. Cullum Avenue, Chicago, Illinois 60641. Luckett stamped and signed the mortgage note evidencing the Gennett Loan. The "Gennett Loan is a fictitious loan. The "Gennett Loan is attached hereto as Exhibit O.

**ANSWER:**    HMI denies the allegations set forth in paragraph 41 and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 41 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

> Complaint ¶42:   The Batch Request identified a particular social security number as belonging to Kenneth Gennett. In fact, no such social security number exists.

**ANSWER:**    HMI specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 42 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

**G.    Current Outstanding Balance for Fictitious Loans**

Complaint ¶43:    In total, of the 54 fictitious mortgage notes that HMI submitted to GMAC as purported collateral to secure advances on HMI's line of credit and pursuant to which GMAC did advance the requested funds to Companion at account No. XXXXX2118, 49 of them: 1) are accompanied by an allonge that was stamped and signed by Lawrence Luckett; and 2) purport to be executed by home borrowers for whom HMI submitted social security numbers that either do not exist, or do exist but belong to a living or deceased individual who is not the person identified by HMI.

**ANSWER:**    HMI denies the allegations set forth in paragraph 43 regarding HMI and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 43 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

Complaint ¶44:    In total, of the 54 fictitious mortgage notes that HMI submitted to GMAC as purported collateral to account advances on HMI's line of credit and pursuant to which GMAC did advance the requested funds to

Companion at account No. XXXXX2118, five of them: 1) purport to be executed by home borrowers for whom HMI submitted social security numbers that either do not exist, or do exist but belong to a living or deceased individual who is not the person identified by HMI; but 2) were never physically received by GMAC because GMAC discovered the fraudulent scheme and notified the Defendants of their discovery before Defendants created and transmitted the fictitious mortgage notes.

**ANSWER:**    HMI denies the allegations set forth in paragraph 44 regarding HMI and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett. HMI lacks sufficient knowledge to admit or deny the remaining allegations set forth in paragraph 44 of Plaintiff's Complaint regarding Luckett and denies all allegations directed to HMI.

Complaint ¶45:    HMI currently has drawn on its line of credit with GMAC funds that are collateralized by fictitious mortgage loans totaling $15,088,692.41. GMAC advance that money to him in reliance on the Fictitious Documents. The entire sum remains unpaid by HMI.

**ANSWER:**    HMI lacks sufficient knowledge and information to admit or deny the allegations relating to amounts procured by Luckett through any fraudulent scheme against GMAC or HMI set forth in paragraph 45 of Plaintiff's Complaint or the amount of funds allegedly collateralized by fictitious loans. HMI specifically denies that such amounts were drawn by HMI and it received or otherwise benefited from the funds purportedly drawn on its line of credit by Luckett or from any other fictitious mortgage loans created or misrepresented by Luckett.

**H.    HMI's Default Under the Agreement**

Complaint ¶46:   On March 14, 2008, GMAC provided notice to HMI that: (a) certain Events of Default have occurred under the Credit Agreement; (b) GMAC had learned that HMI has fraudulently obtained Warehousing Advances; and (c) GMAC was exercising its rights and remedies under the Credit Agreement.

**ANSWER:**   HMI admits that it received a March 14, 2008 letter from GMAC regarding various alleged defaults under the Credit Agreement, alleging that Borrower fraudulently obtained Warehousing Advances and that GMAC intended to exercise various rights under the Credit Agreement.  HMI denies all remaining allegations set forth in paragraph 46 of Plaintiff's Complaint..

Complaint ¶47:   According to Section 3.3(c)(3) of the Credit Agreement, HMI is obligated to pay to GMAC, without the necessity of prior demand or Notice, "the amount of any outstanding Warehousing Advance against a specific Pledged Asset . . . [o]n the date on which a Pledged Loan is determined to have been originated based on untrue, incomplete or inaccurate information or otherwise to be subject to fraud, whether or not [HMI] had knowledge of the misrepresentation, incomplete or inaccurate information or fraud . . . .

**ANSWER:**   HMI admits that Section 3.3(c)(3) of the Credit Agreement attached to Plaintiff's Complaint includes the quoted language .

Complaint ¶48:   According to Section 10.1(a) of the Credit Agreement, failure "to pay the principal of any Warehousing Advance when due is "an event of default . . . .

**ANSWER:**   HMI admits that Section 10.1(a) of the Credit Agreement attached to Plaintiff's Complaint includes the quoted language.

Complaint ¶49:   Defendant HMI used Warehousing Advances for purposes other than those expressly agreed in the Credit Agreement.  Section 7.14 states that HMI must "use the proceeds of each Warehousing Advance solely for the purpose of funding Eligible Assets and against the pledge of those Eligible Assets as Collateral.  Section 10.10(b) indicates that HMI is in default if it "fails to perform or comply with any term or condition applicable to it contained in Sections 7.4 or 7.14 or in any Section of Article 8.

**ANSWER:**    HMI admits that Sections 7.14 and 10.10(b) of the Credit Agreement include the quoted language and denies that HMI used or benefited from Warehousing Advances for purposes other than those expressly agreed in the Credit Agreement. HMI further denies the remaining allegations set forth in paragraph 49 of Plaintiff's Complaint.

> Complaint ¶50:    Section 10.1(o) states that HMI is in default if GMAC's security interest on any portion of the Collateral becomes unenforceable or otherwise impaired. GMAC's security interest in its Collateral is materially impaired as a result of Defendants' conduct.

**ANSWER:**    HMI admits that Section 10.1(o) provides that: "HMI is in default if GMAC's security interest on any portion of the Collateral becomes unenforceable or otherwise impaired" and denies all remaining allegations set forth in paragraph 50 of Plaintiff's Complaint.

> Complaint ¶51:    Section 10.1(p) states that HMI is in default under the Credit Agreement if "[a] material adverse change occurs in [HMI's] financial condition, business, properties or assets, operations or prospects, or in [HMI's] ability to repay the Obligations. There has been a material adverse change in HMI's financial condition, business, properties or assets, operations or prospects, and in HMI's ability to repay the obligations (as defined in the Credit Agreement) as a result of Defendants' conduct.

**ANSWER:**    HMI admits that Section 10.1(p) includes the quoted language and denies that any "material adverse charge in HMI's financial condition . . ." resulted from HMI's conduct. HMI admits that its financial condition has materially adversely changed as a result of Luckett's conduct and denies that any material adverse change is the result of "conduct by HMI." HMI denies all remaining allegations set forth in paragraph 51 of Plaintiff's Complaint.

> Complaint ¶52:    Interest, fees, costs, attorneys' fees and expenses continue to accrue and are due and owing under the Section 10.2(g) of the Credit Agreement and the Note.

**ANSWER:**    HMI admits that Section 10.2(g) of the Credit Agreement provides for interest, fees, costs and attorneys' fees in the event of defaults described in the Agreement and denies all remaining allegations set forth in paragraph 52 of Plaintiff's Complaint.

Complaint ¶53:   On March 14, GMAC accelerated the warehousing advances and other Obligations (as defined in the Credit Agreement) pursuant to its rights under the Credit Agreement, HMI has not made such payment as a result of Defendants' conduct.

**ANSWER:**     HMI admits that GMAC purported to accelerate advances allegedly made under the Credit Agreement and that full payment of the amount demanded has not been made by HMI. HMI denies all remaining allegations set forth in paragraph 53 of Plaintiff's Complaint.  HMI specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise or participated in any unauthorized acts committed individually by Luckett.

### Count I
### Breach of Contract Against Defendant HMI

Complaint ¶54:   GMAC realleges and incorporates by reference the allegations set forth in paragraphs 1-53 as if fully restated herein.

**ANSWER:**     Defendant reincorporates its answers to paragraphs 1 through 53 as its answer to paragraph 54 of Count I of Plaintiff's Complaint.

Complaint ¶55:   The Credit Agreement and the Note constituted a valid contract between GMAC and HMI.

**ANSWER:**     HMI admits that the Credit Agreement and Note were executed by Lawrence Luckett on behalf of HMI and that he had the authority to execute those documents.  HMI denies the allegations set forth in paragraph 55 of Plaintiff's Complaint to the extent that such allegations incorporate or refer to the First, Second or Third Amendments to the Credit Agreement.

Complaint ¶56:   Under the Credit Agreement and the Note, HMI was obligated to make payments in accordance with the terms and conditions of the Credit Agreement and Note.

**ANSWER:**     HMI admits the allegations set forth in paragraph 56 of Plaintiff's Complaint.

Complaint ¶57:   HMI breached its contract with GMAC by failing to make payments on the Note and under the Credit Agreement when due.

**ANSWER:**     HMI denies the allegations set forth in paragraph 57 of Plaintiff's Complaint and specifically denies that it caused, created or benefitted from any alleged breach of the Agreement, caused, requested or otherwise received improper advances under the Credit Agreement or otherwise breached the Credit Agreement or Note.  Any alleged amounts due to GMAC arose from a fraudulent scheme committed by Lawrence Luckett on both GMAC and HMI.

Complaint ¶58:   GMAC has performed all obligations required of it under the Credit Agreement and the Note, except those excused by HMI's conduct in breaching the Credit Agreement and the Note.

**ANSWER:**     HMI denies the allegations set forth in paragraph 58 of Plaintiff's Complaint.

Complaint ¶59:   HMI is liable to GMAC for the entire outstanding principal balance of the Credit Agreement and the Note, plus accrued interest, attorneys' fees and collective costs.

**ANSWER:**     HMI denies the allegations set forth in paragraph 59 of Plaintiff's Complaint. Any alleged damages to GMAC arose from a fraudulent scheme by Luckett independent of the Contract and not from any breach by HMI.

Complaint ¶60:   As a direct and proximate result of HMI's conduct and breaches, GMAC has suffered significant damages in an amount to be proven at trial, in excess of $15 million.

**ANSWER:**     HMI denies the allegations set forth in paragraph 60 of Plaintiff's Complaint and denies that HMI's conduct resulted in damages to GMAC.  HMI further denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any

fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise.

WHEREFORE, Defendant Home Mortgage, Inc. prays that this Court enter judgment in its favor and against Plaintiff GMAC Bank, and for such other relief as this Court deems just and equitable.

### Count II
### Fraud Against Defendant HMI

**Complaint ¶61:** GMAC realleges and incorporates by reference the allegations set forth in paragraphs 1-53 as if fully restated herein.

**ANSWER:** Defendant reincorporates its answers to paragraphs 1 through 53 as its answer to paragraph 61 of Count II of Plaintiff's Complaint.

**Complaint ¶62:** The Fictitious Documents transmitted to GMAC by HMI and its agents and/or employees were false representations of material fact to GMAC. Specifically, those documents falsely represented to GMAC that advances on HMI's line of credit would be secured by valid mortgage loans.

**ANSWER:** HMI specifically denies that it transmitted Fictitious Documents to GMAC or that it made false representations of fact to GMAC. HMI denies that it had knowledge of the Fictitious Documents or the representations contained therein and that any Fictitious Documents were transmitted by, or with the knowledge of, HMI. HMI denies that it participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests, fictitious mortgage loans or purchase advances, for the purpose of drawing funds or otherwise. HMI lacks sufficient knowledge to admit or deny allegations regarding the content of the Fictitious Documents set forth in paragraph 62 of Plaintiff's Complaint and denies all allegations directed to HMI.

Complaint ¶63:   HMI and its agents concealed, hid, falsified and/or manufactured documents, including information displayed on the MERS database, which may have led to the discovery of the fraud.

**ANSWER:**     HMI denies the allegations set forth in paragraph 63 of Plaintiff's Complaint and specifically denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise.

Complaint ¶64:   HMI and its agents knew their representations were false.

**ANSWER:**     HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise.  Therefore, HMI denies the allegations set forth in paragraph 64 of Plaintiff's Complaint.

Complaint ¶65:   HMI and its agents intended GMAC to act on the representations or omissions and to provide warehousing advances as requested.

**ANSWER:**     HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise.  Therefore, HMI denies the allegations set forth in paragraph 65 of Plaintiff's Complaint.

**Complaint ¶66:**    GMAC relied on the Fictitious Documents in authorizing the advance of funds on HMI's line of credit.

**ANSWER:**    HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise.  Therefore, HMI denies that GMAC relied on any acts or representations of HMI and denies the allegations set forth in paragraph 66 of Plaintiff's Complaint regarding GMAC's reliance.

**Complaint ¶67:**    HMI's concealment of the fraudulent scheme, including its creation of Fictitious Documents that were intended to appear real, its steps taken to list GMAC's apparent interest in the fictitious mortgage loans on the MERS database and its use of dummy corporations rendered GMAC's reliance on the false representations reasonable.

**ANSWER:**    HMI denies the allegations set forth in paragraph 67 of Plaintiff's Complaint.

**Complaint ¶68:**    As a direct and proximate result of HMI's conduct and fraud, GMAC has suffered significant damages, in an amount to be proven at trial, in excess of $15 million.

**ANSWER:**    HMI denies the allegations set forth in paragraph 68 of Plaintiff's Complaint.

WHEREFORE, Defendant Home Mortgage, Inc. prays that this Court enter judgment in its favor and against Plaintiff GMAC Bank, and for such other relief as this Court deems just and equitable.

## Count III
## Fraudulent Inducement Against Defendant HMI

**Complaint ¶69:**    GMAC realleges and incorporates by reference the allegations set forth in paragraphs 1-53 as if fully restated herein.

**ANSWER:**    Defendant reincorporates its answers to paragraphs 1 through 53 as its answer to paragraph 69 of Count II of Plaintiff's Complaint.

Complaint ¶70:    The Fictitious Documents transmitted to GMAC by HMI and its agents and/or employees were false representations of material fact to GMAC.    Specifically, those documents falsely represented to GMAC that advances on HMI's line of credit would be secured by valid mortgage loans.

**ANSWER:**    HMI denies that it transmitted Fictitious Documents to GMAC or made false representations to GMAC.  HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise.  Therefore, HMI denies the remaining allegations set forth in paragraph 70 of Plaintiff's Complaint.

Complaint ¶71:    HMI and Luckett had been engaged in the scheme as far back as January, 2005, and so had issued false statements prior to execution of the August 2007 Credit Agreement and the Note.

**ANSWER:**    HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise.  Therefore, HMI denies the allegations set forth in paragraph 71 of Plaintiff's Complaint directed to HMI.

Complaint ¶72:    HMI and its agents concealed, hid, falsified and/or manufactured documents, including information displayed on the MERS database, which may have led to the discovery of the fraud.

**ANSWER:**    HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds

or otherwise.  Therefore, HMI denies the allegations set forth in paragraph 72 of Plaintiff's Complaint.

Complaint ¶73:   HMI and its agents knew their representations were false.

**ANSWER:**    HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise.  Therefore, HMI denies the allegations set forth in paragraph 73 of Plaintiff's Complaint.

Complaint ¶74:   HMI's participation in the fraudulent scheme in advance of the execution of the Credit Agreement, as well as its efforts to conceal the existence of the fraudulent scheme, placed HMI in a position of superior knowledge to GMAC.

**ANSWER:**    HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise.  Therefore, HMI denies the allegations set forth in paragraph 74 of Plaintiff's Complaint.

Complaint ¶75:   HMI had a duty to disclose the existence of the fraudulent scheme to GMAC during negotiations regarding the Credit Agreement and the Note.

**ANSWER:**    HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage

notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise. Therefore, HMI denies the allegations set forth in paragraph 76 of Plaintiff's Complaint.

> Complaint ¶76:  HMI failed to disclose the existence of its fraudulent scheme to GMAC prior to execution of the Credit Agreement and the Note.

**ANSWER:**     HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise. Therefore, HMI denies the allegations set forth in paragraph 76 of Plaintiff's Complaint.

> Complaint ¶77:  HMI's concealment of the fraudulent scheme, including its creation of Fictitious Documents that were intended to appear real, its steps taken to list GMAC's apparent interest in the fictitious mortgage loans on the MERS database and its use of dummy corporations rendered GMAC's reliance on the false representations reasonable.

**ANSWER:**     HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise. Therefore, HMI denies the allegations set forth in paragraph 77 of Plaintiff's Complaint.

> Complaint ¶78:  Had HMI revealed the existence of the fraudulent scheme, GMAC would not have entered into the Credit Agreement and the Note with HMI.

**ANSWER:**     HMI denies that it had knowledge of, participated in, concealed or otherwise authorized or received the benefits of any fraudulent scheme, fraud, misrepresentation, breach of

contract, default or intentional tort, including, without limitation, submitting fictitious mortgage notes, endorsed allonges, Batch Requests or purchase advances, for the purpose of drawing funds or otherwise. HMI lacks sufficient knowledge to admit or deny the remaining allegations regarding GMAC's intent and state of mind set forth in paragraph 78 of Plaintiff's Complaint.

> Complaint ¶79:   As a direct and proximate result of HMI's conduct and fraud, GMAC has suffered significant damages, in an amount to be proven at trial, in excess of $15 million.

**ANSWER:**   HMI denies the allegations set forth in paragraph 79 of Plaintiff's Complaint.

WHEREFORE, Defendant Home Mortgage, Inc. prays that this Court enter judgment in its favor and against Plaintiff GMAC Bank, and for such other relief as this Court deems just and equitable.

### Count IV
### Declaratory Judgment Against Defendant HMI and Defendant Luckett

> Complaint ¶80:   GMAC realleges and incorporates by reference the allegations set forth in paragraphs 1-53 as if fully restated herein.

**ANSWER:**   Defendant reincorporates its answers to paragraphs 1 through 53 as its answer to paragraph 80 of Count IV of Plaintiff's Complaint.

> Complaint ¶81:   A real and bona fide dispute exists between the parties.

**ANSWER:**   HMI admits the allegations set forth in paragraph 81 of Plaintiff's Complaint.

> Complaint ¶82:   HMI has defaulted under the Credit Agreement.

**ANSWER:**   HMI admits that certain advances made by GMAC as a result of the fraudulent scheme of Lawrence Luckett have not been paid to GMAC and denies all remaining allegations set forth in paragraph 82 of Plaintiff's Complaint.

> Complaint ¶83:   Those defaults are an Event of Default under the Credit Agreement that entitles GMAC to exercise its remedies under the Credit Agreement and the Uniform Commercial Code, including the right to demand immediate payment of all amounts due, delivery of all credit files and payment

histories regarding any mortgage loans made by HMI using funds provided by GMAC under the Credit Agreement, receiving all payments made in respect of any such mortgage loans and taking over the servicing of all such mortgage loans.

**ANSWER:**     HMI admits that GMAC has various remedies under the Credit Agreement and the Uniform Commercial Code for breaches of the Credit Agreement. HMI denies all remaining allegations set forth in paragraph 83 of Plaintiff's Complaint.

> Complaint ¶84:     GMAC seeks a declaration that:
>
> a.     Events of Default exist under the Credit Agreement;
>
> b.     HMI and Defendant Luckett are jointly and severally required to pay all amount outstanding under the Promissory Note and Credit Agreement; and
>
> c.     HMI is required to remit all funds received in respect of any mortgage loans made by HMI using funds provided by GMAC under the Credit Agreement to GMAC immediately upon receipt.

**ANSWER:**     HMI admits that Plaintiff's Complaint seeks the relief described in paragraph 84, but denies that Plaintiff is entitled to such relief as to HMI.

WHEREFORE, Defendant Home Mortgage, Inc. prays that this Court enter judgment in its favor and against Plaintiff GMAC Bank, and for such other relief as this Court deems just and equitable.

## Count V
### Liability on the Guaranty Against Defendant Luckett

Count V is not directed toward Defendant Home Mortgage, Inc. and, therefore, no answer is required.

## Count VI
### Fraud Against Defendant Luckett and Defendants Doe 1-10

Count VI is not directed toward Defendant Home Mortgage, Inc. and, therefore, no answer is required.

### Count VII
### Tortious Interference with Contract Against Defendant Luckett and Defendants Doe 1-10

Count VII is not directed toward Defendant Home Mortgage, Inc. and, therefore, no answer is required.

### AFFIRMATIVE DEFENSES

Defendant, Home Mortgage, Inc. ("HMI"), by and through its attorneys, Garfield & Merel, Ltd., for its Affirmative Defenses to Plaintiffs' Complaint, states as follows:

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim-Extra-contractual Damages)

1.        Plaintiff's Complaint fails to state a claim for which relief can be granted on Count II (Fraud) and Count III (Fraudulent Inducement) of Plaintiff's Complaint. Extra-contractual and tort damages are not recoverable under either Illinois or Minnesota law (whichever may be applicable) for claims that arise from a breach of contract. Plaintiff's claim for Fraud and Fraudulent Inducement are indistinguishable from its breach of contract claim. In order to recover under theories of both contract and fraud, Plaintiff must prove separate damages for fraud distinct from its breach of contract claim. Since Plaintiff's claims under both Counts II and III allege damages for fraud and fraudulent inducement that are identical to, and flow directly from, an alleged breach of the Credit Agreement, Plaintiff fails to state a claim for fraud or fraudulent inducement against HMI under                                applicable                                law.

### SECOND AFFIRMATIVE DEFENSE

### (Waiver-Damages)

2.        Pursuant to Article 11.18 of the August 20, 2007 Credit Agreement between GMAC (as Lender) and Home Mortgage, Inc. (as Borrower), "Borrower and Lender each

waives any right it may have to seek punitive, consequential, special or indirect damages from the other party or any of the other party's affiliates, officers, directors, employees or agent…with respect to all issues presented in any action, proceeding, claim or counterclaim brought by either party against the other party…with respect to any matter arising out of or in connection with [the Credit Agreement] or any Loan Agreement." To the extent the Complaint seeks extra-contractual relief, tort damages or other damages beyond compensatory breach of contract damages for any cause of action, such damages are barred by the Credit Agreement.

### THIRD AFFIRMATIVE DEFENSE

### (Failure to State a Claim-No Vicarious Liability)

3.      Counts II and III of Plaintiff's Complaint allege that Lawrence Luckett submitted Fictitious Documents (purportedly consisting of fictitious mortgage notes and fictitious social security numbers), upon which GMAC allegedly relied in making advances. HMI did not participate in, authorize or have knowledge of the Fictitious Documents, or any other allegedly fraudulent documents submitted by Luckett and did not benefit from any advances made in reliance of such documents. Luckett did not have the actual or apparent authority to submit the Fictitious Documents or otherwise fabricate documents for submission to GMAC or otherwise on behalf of HMI. All alleged intentional and/or fraudulent acts or submissions of Fictitious Documents to GMAC by Luckett were outside the scope of his employment. All acts of Luckett alleged in Plaintiff's Complaint solely benefitted Luckett and did not further the interests of business of HMI. Since GMAC's claims against HMI arise vicariously and solely through the unauthorized acts of Luckett beyond the scope of his employment or agency,

GMAC fails to state a claim for fraud or fraudulent inducement against HMI.


WHEREFORE, Defendant Home Mortgage, Inc. prays that this Court enter judgment in its favor and against Plaintiff GMAC Bank, and for such other relief as this Court deems just and equitable.

## COUNTERCLAIM

### (Setoff)

Defendant/Counter-Plaintiff, Home Mortgage, Inc., for its counterclaim against Plaintiff, GMAC Bank, alleges and states as follows:

1.  On information and belief, Plaintiff has seized and recovered assets of HMI and/or Luckett, including, without limitation, funds in bank accounts.  Further, GMAC, on information and belief, has sold various loans and therefore recovered funds that were advanced against HMI's line of credit.  In the event of any liability against HMI, HMI is entitled to a set-off and credit against any judgment entered against HMI in this action in the amount of any amounts recovered, collected, seized or otherwise obtained by GMAC.

WHEREFORE, Counter-Plaintiff, Home Mortgage, Inc. prays that this Court enter judgment in its favor, and against Plaintiff, GMAC Bank, allowing applicable credits and set-offs against any liability in this action against HMI, in an amount to be proved at trial and for such further relief as this Court deems just and equitable.

HOME MORTGAGE, INC.


By: s/Gregory A. McCormick
One of its attorneys

Gregory A. McCormick (ARDC #6201621)
Alan H. Garfield (ARDC # 0914320)
GARFIELD & MEREL, LTD.
223 W. Jackson Blvd., Suite 1010
Chicago, IL  60606
(312) 288-0105

STATE OF ILLINOIS   )
                       )   SS.:
COUNTY OF COOK    )

## <u>CERTIFICATE OF SERVICE</u>

    I, Gregory A. McCormick, on oath state I served the foregoing Defendant Home Mortgage, Inc. to the persons named below by electronic filing, before 5:00 p.m. on this 30th day of May, 2008.


<u>s/Gregory A. McCormick</u>
Gregory A. McCormick


## <u>SERVICE LIST</u>

**Timothy J. McCaffrey**
**Timothy Joseph Rivelli**
**Scott C. Walton**
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601-9703
(312) 558-5600